UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - -x
NIDAL AYYAD,                              :
                        Movant,           :
                                          :
   - v -                                  :
                                          :        **93 Cr. 180 (LAK)**
UNITED STATES,                            :        **16 Civ. 4346 (LAK)**
                        Respondent.   :
- - - - - - - - - - - - - - - - - - - - - - - -x


## MOTION FOR CERTIFICATE OF APPEALABILITY

Federal Defenders of New York
Daniel Habib, Esq.
Attorney for Movant
**Nidal Ayyad**
52 Duane Street—10th Floor
New York, NY 10007
Tel.: (646) 484–1724


TO:        Audrey Strauss, Esq.
           Acting United States Attorney
           Southern District of New York
           1 St. Andrew's Plaza
           New York, NY 10007
Attn:      **Ryan Finkel, Esq.**

Pursuant to 28 U.S.C. § 2253(c), Nidal Ayyad moves for a certificate of appealability ("COA") from this Court's memorandum opinion denying his request for plenary resentencing following the partial grant of his 28 U.S.C. § 2255 motion (Dkt. No. 979). Specifically, this Court should issue a COA on the question whether Ayyad was entitled to plenary resentencing upon the vacatur of his Count 10 conviction in light of United States v. Davis, 139 S. Ct. 2319 (2019).

## BACKGROUND

Ayyad was convicted, following a jury trial, of multiple offenses arising from the 1993 bombing of the World Trade Center.[1] He was sentenced to an aggregate term of 1,405 months, comprised of: "(1) concurrent terms of imprisonment of 685 months, which was designed to be one month short of his life expectancy, on Counts 1–6 and 8, and (2) two additional mandatory 360-month sentences on each of Counts 9 and 10 (the § 924(c) counts) to run consecutively to each other and to the 685 months of imprisonment on Counts 1–6 and 8." Dkt. No. 979, at 2.

After Johnson v. United States, 576 U.S. 591 (2015) (invalidating 18 U.S.C. § 924(e)(2)(B)(ii), residual clause of ACCA's definition of violent felony, as void for vagueness); Davis (applying Johnson to 18 U.S.C. § 924(c)(3)(B) residual clause); and United States v. Barrett, 937 F.3d 126 (2d Cir. 2019) (holding that conspiracy to commit Hobbs Act robbery is not 18 U.S.C. § 924(c)(3)(A) crime of violence), Ayyad moved for § 2255 relief. Specifically, Ayyad

---

[1] The jury convicted Ayyad of: conspiracy to bomb buildings used in interstate and foreign commerce, to bomb property of the United States, to transport explosives in interstate commerce for the purpose of damaging or destroying property, and to bomb automobiles used in interstate commerce, in violation of 18 U.S.C. § 371 (Count 1); bombing a building used in interstate and foreign commerce, 18 U.S.C.§ 844(i) (Count 2); bombing property of the United States, 18 U.S.C. § 844(f) (Count 3); transporting explosives in interstate commerce for the purpose of damaging or destroying property, 18 U.S.C. § 844(d) (Count 4); bombing automobiles used in interstate commerce, 18 U.S.C. § 33 (Counts 5 and 6); assaulting federal officers, 18 U.S.C. § 111 (Count 8); and using and carrying a bomb during and in relation to crimes of violence, namely, the Count 1 conspiracy and the Count 8 assault, 18 U.S.C. § 924(c)(1) (Counts 9 and 10). See United States v. Salameh, 261 F.3d 271, 274 (2d Cir. 2001).

sought vacatur of his Count 9 and 10 convictions on the ground that the predicate offenses no longer constituted crimes of violence for purposes of § 924(c). This Court denied the motion as to Count 9 (which was predicated on assault of a federal officer), granted the motion as to Count 10 (which was predicated on a § 371 conspiracy), and stated that it would enter an amended judgment vacating Count 10 and reducing Ayyad's sentence by 360 months. Dkt. No. 959, at 4.

Before this Court did so, Ayyad requested de novo resentencing on the remaining counts, arguing that vacatur of a count of conviction requires de novo resentencing under United States v. Rigas, 583 F.3d 108 (2d Cir. 2009), and United States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002). Dkt. Nos. 963, 965, 972. Citing his "extraordinary record of post-sentence rehabilitation during his 27 years of incarceration" Ayyad sought to argue for "a reduced sentence which reflects his contrition and rehabilitative efforts." Dkt. No. 963, at 1. The government opposed. Dkt. No. 968.

This Court denied Ayyad's request, concluding that "the Quintieri default rule" applies only where "'the conviction on one or more charges is overturned on appeal and the case is remanded for resentencing,'" but not "in the habeas context." Dkt. No. 979, at 4 (quoting 306 F.3d at 1227–28). Noting the "limited availability" of § 2255 relief, this Court reasoned that "[a] default rule requiring that the district court hold a de novo resentencing each and every time a defendant successfully challenges at least one count of a multi-count conviction would be in tension with the narrow scope of [§] 2255." Id. at 4–5. And this Court accepted the government's argument that "'the plain text of § 2255 vests this Court with the discretion to determine first the nature of the relief that 'may appear appropriate.'" Id. at 5 (quoting Dkt. No. 970, at 3 n.2); see § 2255(b).

This Court acknowledged that it had discretion to resentence Ayyad de novo, but declined to exercise that discretion on three grounds. First, "the vacatur of one of the two consecutive 30-year sentences that themselves were imposed to follow service of the concurrent sentences of one

2

month short of movant's life expectancy has not altered the 'knot of calculation'" reflected in the overall sentence. Dkt. No. 979, at 5–6 (quoting Quintieri, 306 F.3d at 1227–28). Second, Ayyad had "previously appealed" his sentence, and his arguments had either been "rejected by the Court of Appeals" or "were waived," so that "the policies that animate the mandate rule counsel against a discretionary de novo resentencing." Id. at 6. Third, there was a "strong likelihood" that any resentencing would be "entirely academic" in light of the severity of Ayyad's offenses. Id. at 6–7.

## ARGUMENT

### I.     This Court Should Issue A COA.

A.     Section 2253(c)(2) provides that a COA "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." A federal prisoner satisfies that standard by "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 860, 893 & n.4 (1983)). "The COA inquiry ... is not coextensive with a merits analysis." Buck v. Davis, 137 S. Ct. 759, 773 (2017). "A COA does not require a showing that the appeal will succeed," and a court "should not decline the application for a COA merely because it believes that the applicant will not demonstrate an entitlement to relief." Miller-El v. Cockrell, 537 U.S. 322, 337 (2003). Rather, "it is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief," and "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. at 337–38. Here, Ayyad satisfies the modest COA standard.

B.     Reasonable jurists could debate whether Quintieri, Rigas, and United States v.

3

<u>Powers</u>, 842 F.3d 177 (2016) (<u>per curiam</u>) require <u>de novo</u> resentencing when a § 2255 motion results in vacatur of a count of conviction. Granted, all three cases arose on direct appeal. But none limits its holding to direct appeals. On the contrary, the logic of these cases applies with equal force to § 2255 proceedings. <u>Quintieri</u> explains that "[a] district court's sentence is based on the constellation of offenses for which the defendant is convicted and their relationship to a mosaic of facts." 306 F.3d at 1227. "When the conviction on one or more charges is overturned on appeal and the case is remanded for resentencing, the constellation of offenses of conviction has been changed and the factual mosaic related to those offenses that the district court must consult to determine the appropriate sentence is likely altered." <u>Id.</u> at 1227–28. Thus, "[f]or the district court to sentence the defendant accurately and appropriately, it must confront the offenses of conviction and the facts anew." <u>Id.</u> at 1228. And in doing so, the court must consider changes to the "factual mosaic" that have occurred since the original sentencing. <u>E.g.</u>, <u>United States v. Bryson</u>, 229 F.3d 425, 426 (2d Cir. 2000) (<u>per curiam</u>) (post-sentencing rehabilitation); <u>see also</u> <u>Werber v. United States</u>, 149 F.3d 172, 178 (2d Cir. 1998) ("[T]he district court was required to resentence Werber in light of the circumstances as they stood at the time of his resentencing.").

None of these considerations is exclusive to direct appeals. Where, as here, a district court grants a § 2255 motion and vacates a count of conviction, "the constellation of offenses of conviction has been changed," too. <u>Quintieri</u>, 306 F.3d at 1227–28. And where, as here, more than 20 years have elapsed since the previous sentencing, the "mosaic of facts, including ... other relevant behavior of the defendant," has indeed been "altered." <u>Id.</u> <u>See infra</u> § I.C (discussing and documenting Ayyad's post-sentencing rehabilitation). Consequently, when imposing a new sentence in this situation, a court "must confront the offenses of conviction and the facts anew," as this Court was obliged to do. <u>Id.</u> at 1228. As post-<u>Quintieri</u> cases establish, the vacatur of any

count of conviction, no matter how tangential that count may appear, necessitates de novo resentencing. E.g., United States v. Hertular, 562 F.3d 433, 446 (2d Cir. 2009) (applying Quintieri and requiring de novo resentencing because reversal of one of four counts of conviction "changes the 'constellation of offenses' relevant to sentencing," even though "the 'factual mosaic' may be little altered"). "[E]ven in these circumstances, we must vacate the defendant's sentence and remand the case to the district court so that it may decide, in the first instance, whether a conviction on three rather than four counts affects its assessment of the sentencing factors detailed in 18 U.S.C. § 3553(a)." Id. See also Powers, 842 F.3d at 180–81 (applying Quintieri and Rigas after vacating one of 13 counts of conviction).

None of those factors has any less force when the vacatur occurs in § 2255 proceedings. Indeed, in one part of the opinion, Quintieri described its holding in terms more general than direct appeal: "Today we conclude that when a resentencing results from a vacatur of a conviction, we in effect adhere to the de novo default rule." Id. at 1229 n.6. And in Rigas, this Court summarized Quintieri in those same general terms: "Quintieri supplies two pertinent rules: (1) where a count of conviction is overturned—as opposed to an aspect of a sentence— resentencing must be de novo; and (2) de novo means 'anew.'" 583 F.3d at 116 (quoting Quintieri, 306 F.3d at 1228). See also Kaminski v. United States, 334 F.3d 84, 89 n.3 (2d Cir. 2003) (referring, in dictum, to scenario "[w]here a habeas challenge to incarceration results in the overturning of a conviction, ... so that the defendant must later be resentenced in toto").

The reasoning of United States v. Gordils, 117 F.3d 99 (2d Cir. 1997), which refused to distinguish between direct and collateral review in a similar context, is in accord. In Gordils, the § 2255 movants successfully challenged their § 924(c) convictions in light of Bailey v. United States, 516 U.S. 137 (1995). At the government's urging, the district court then increased the

movants' sentences on their unchallenged predicate drug trafficking offenses to reflect the application of a Guideline enhancement for using a firearm, which their § 924(c) convictions had precluded at their original sentencings. See 117 F.3d at 100–01 (citing U.S.S.G. §§ 2D1.1(b)(1) and 2K2.4 cmt. n.2). The Circuit affirmed, explaining: "Had we vacated the § 924(c) convictions of these defendants on direct appeal, the district court would clearly have had jurisdiction to resentence defendants on the narcotics convictions, including imposing a two-level enhancement under U.S.S.G. § 2D1.1(b)(1)." Gordils rejected the movants' argument that "that the situation is different when a § 924(c) conviction is overturned on collateral review" because "'an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'" 117 F.3d at 103 (quoting Brecht v. Abrahamson, 507 U.S. 619, 634 (1993)). To the contrary, Gordils concluded: "We see no compelling reason why the legal interdependence of sentences under the guidelines should not as surely lead us to reconsider related sentences in the context of collateral attack as it does in the context of a direct appeal." Id. Gordils contravenes key premises of this Court's ruling—namely, that habeas proceedings so differ from direct review, and that "scope" of § 2255 proceedings is so "narrow"—as to counsel against de novo resentencing to remedy conviction error. See Dkt. No. 979, at 4–5.

This Court also pointed to § 2255(b)'s text as conferring discretion upon a district judge to select the proper remedy in the first instance. Dkt. No. 979, at 5. Notwithstanding that "broad and flexible remedial authority" (Gordils, 117 F.3d at 103), in at least one other context, the Second Circuit has adopted a per se rule mandating de novo resentencing following the grant of a § 2255 motion: where the motion is granted because the district court had failed to advise the defendant of his right to appeal at the original sentencing. United States v. Harris, 209 F.3d 156, 163 (2d Cir. 2000); Soto v. United States, 185 F.3d 48, 54 (2d Cir. 1999). In Harris, the Circuit identified

reversible error in the district court's failure to conduct a <u>de novo</u> resentencing proceeding following such a § 2255 grant. 209 F.3d at 163. <u>See also</u> <u>Soto</u>, 185 F.3d at 55–56 (remanding for fact-finding on movant's knowledge of appellate rights, but stating that if movant lacked knowledge, "then [movant's] sentence shall be vacated and he shall be resentenced <u>de novo</u>"). These cases establish that § 2255(b), and the flexibility inherent in habeas procedure, do not foreclose the existence of categorical rules of the type that Ayyad urges here.

Since <u>Davis</u>, the government has sought, and district judges have conducted, plenary resentencing in dozens of § 2255 cases following the vacatur of § 924(c) convictions. Typically, the government seeks plenary resentencing for the purpose of pursuing an increased sentence on the unchallenged predicate crime of violence. (As in <u>Gordils</u>, the Guideline range on the predicate often increases due to the application of the firearm enhancement.) <u>E.g.</u>, <u>United States v. James</u>, 13 Cr. 836 (SHS) (S.D.N.Y.), Dkt. Nos. 330 (government request for vacatur of § 924(c) count and resentencing on Hobbs Act conspiracy count), and 343 (government request for increased sentence on conspiracy count, to equal original aggregate sentence); <u>see also, e.g.</u>, <u>Acosta v. United States</u>, 2019 WL 4140943, at *4 (W.D.N.Y. Sept. 2, 2019) (noting that government "join[ed]" movant's request "for a full resentencing hearing" after § 924(c) vacatur). But § 2255 is not a one-way street. If the government can rely on <u>Gordils</u> to pursue plenary resentencing in service of lengthening a successful movant's sentence on unchallenged counts, there is nothing in § 2255's text, <u>Gordils</u>, or the Second Circuit's <u>Quintieri</u> line of decisions that withholds the same option from a federal prisoner seeking to shorten his sentence on those same counts. Rather, "the fair course to follow in these circumstances is to conduct a resentencing <u>de novo</u>." <u>Reyes v. United States</u>, 944 F. Supp. 260, 265 (S.D.N.Y. 1996) (after vacatur of § 924(c) count, ordering

<u>de novo</u> resentencing on predicate drug trafficking count over government's objection).[2]

      C.     Even if <u>Quintieri</u> and <u>Rigas</u> do not require <u>de novo</u> resentencing, reasonable jurists could debate whether Ayyad merits resentencing as a discretionary matter. While serving a term of imprisonment that afforded him no realistic prospect of release—at some of the most restrictive facilities within BOP, including ADX Florence and the Communications Management Units at USP Terre Haute and USP Marion—Ayyad has amassed an extraordinary institutional record. He has no disciplinary infractions in more than 22 years. Exh. A (BOP Summary Reentry Plan—Progress Report), at 3. And he has completed more than 80 educational, rehabilitative, and vocational programs. <u>Id.</u> at 1–3. His most recent BOP Progress Report depicts a changed man, a mature and rehabilitated 53-year-old quite different from the youth who committed these offenses more than a quarter-century ago: "Besides having 20+ years of clear conduct, Ayyad [has] an overall positive institutional adjustment and professional development. He has developed an appropriate and professional rapport with staff and is seen as an example in the unit." <u>Id.</u> at 4.

      Ayyad's recent experience at USP Hazelton illustrates this transformation. There, Ayyad has done extensive work as a program facilitator and GED tutor in the Bounce Back Re-Entry Transition Unit, a specialized housing unit that allows inmates to engage in continuing-education and release-preparation courses. Exh. A, at 1, 3, 4. His inmate counselor, F. VanKirk, praises Ayyad's work in the strongest terms: "[H]e has been a tremendous help with the GED portion of the program. He works with the students during his work [h]ours as well as his own personal time. He has never been a disciplinary problem. He volunteers as needed and when asked. He sets

---

[2] Two other courts have granted COAs in analogous circumstances—indeed, less favorable circumstances, because they only involved claims of sentencing error—on the question whether successful § 2255 movants were entitled to <u>de novo</u> resentencing. <u>Troiano v. United States</u>, 918 F.3d 1082, 1086 (9th Cir. 2019); <u>United States v. Thomason</u>, 940 F.3d 1166, 1171 (11th Cir. 2019). Issuance of COAs in these cases all but compels the same result here.

an example for others within the program to follow." Exh. B (BOP Letters), Letter of June 11,

2019. So does the GED teacher whom Ayyad assisted: Ayyad "worked during the evening and

weekends ... tutoring other inmates that were preparing to take their official GED tests," resulting

in "several GED completions." Exh. B, Letter of J. Ridenour. "Ayyad has a very high level of

math efficiency and can teach complex topics, including some calculus. He had excellent

attendance .... I would highly recommend him as a tutor." Id. Inmates whom Ayyad tutored credit

their GEDs to him. E.g., Exh. C (Inmate Letters), Letter of Christopher Tyler ("He never gave up

on me, despite my failing the test twice. Mr. Ayyad used to spend his personal time with me to

tutor me and prep me for the test, he sacrificed yard in order to tutor me. It PAID OFF, I obtained

my GED in late 2018. ... I was so happy and felt a great sense of confidence."). Staff attest that

Ayyad "has been an instrumental part of the formulation and continued success of the Transition

Unit Program the Education GED program at USP Hazelton." Exh B, Letter of Jan. 3, 2020.

Ayyad deserves an opportunity to present this and other material as a basis for a reduced

sentence. In Quintieri, the Second Circuit held that a § 2255 movant who secured a limited

resentencing—based only on a potential sentencing error, not (as here), vacatur of a count of

conviction—was entitled, as a matter of law, to present evidence of post-sentencing rehabilitation

as grounds for a downward departure. 306 F.3d at 1232 ("To the extent that [the movant] argues

that he should receive a downward departure for rehabilitation that occurred subsequent to his

initial sentencing, this argument is similarly not barred because it is based on 'intervening

circumstances.'"). Having established conviction error, Ayyad stands on firmer footing. See also,

e.g., Bryson, 229 F.3d at 426 (on remand in direct appeal, defendant entitled to present evidence

of post-sentencing rehabilitation); United States v. Hoey, 2018 WL 4007635, at *3 (S.D.N.Y.

Aug. 22, 2018) (same). This Court justified its refusal to conduct de novo resentencing, in part, on

the ground that the Second Circuit had affirmed Ayyad's sentence in 2001, such that any

available challenges to his sentence were then either "rejected" or "waived." Dkt. No. 979, at 6.

But Ayyad's claim of post-sentencing rehabilitation was neither presented nor waived because it

was not then available: only his decades of good behavior and positive institutional adjustment

enable him to advance that claim today. See Quintieri, 306 F.3d at 1232; Hoey, 2018 WL

4007635, at *3 ("Hoey's purported post-conviction rehabilitation arose after the original sentence

and could constitute an 'intervening circumstance,' entitling Hoey to resentencing."). Moreover,

Ayyad was sentenced under the mandatory Guidelines, and "Quintieri has particular salience in

the post-Booker regime, under which a District Court must make an individualized assessment

based on all the sentencing factors in § 3553(a)." Rigas, 583 F.3d at 116.

     This Court also resisted discretionary resentencing on the ground that Ayyad's 30-year

sentence on Count 10 was not "'inextricably tied to other counts.'" Dkt. No. 979, at 6 (quoting

Quintieri, 306 F.3d at 1227). But Rigas clarified that this consideration is only relevant where

there has been sentencing error, not, as here, conviction error. 583 F.3d at 117–18. In Rigas, the

government argued that "Quintieri require[s] de novo resentencing only where ... the 'spirit of the

mandate' requires as much (such as when the reversed portion of the conviction is 'inextricably

linked' to the remainder of the conviction)." Id. Rigas disagreed with the government's

interpretation of Quintieri: "[I]t is clear from Quintieri that the ... consideration[] identified by the

government appl[ies] only where an appellate court has reversed part of a sentence, not part of a

conviction." Id. at 118. In the latter case, a defendant need not show an "inextricable link" or that

the "knot of calculation" has been undone. Rather, upon reversal of "a portion of [his]

conviction," a defendant is "entitled to be resentenced de novo." Id.

     Finally, this Court doubted whether the severity of Ayyad's offenses would permit a non-

life sentence. Dkt. No. 979, at 6–7. But that is only one of the § 3553(a) factors, and Ayyad's

exemplary conduct over the past two decades has earned him the opportunity to present evidence

relevant to his "history and characteristics," to the need for incapacitation and deterrence, and to

the need for continued incarceration to rehabilitate him. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D).

To obtain a COA, Ayyad need not show that he would receive a lower sentence. He need not

even show that he should be resentenced. All he needs to show, at this juncture, is that reasonable

jurists could debate whether he is entitled to a resentencing proceeding, either under the

Quintieri/Rigas default rule, or as a matter of discretion. He has met that low bar.

## CONCLUSION

This Court should issue a COA on the question whether whether Ayyad was entitled to

plenary resentencing upon the vacatur of his Count 10 conviction in light of Davis.

Dated:          New York, New York
                October 15, 2020


                        Respectfully submitted,

                        FEDERAL DEFENDERS OF NEW YORK, INC.
                        APPEALS BUREAU

                        By: /s/

                        **DANIEL HABIB**
                        Attorney for Movant
                           **Nidal Ayyad**
                        52 Duane Street, 10th Floor
                        New York, New York 10007
                        Tel.: (646) 484–1724

# EXHIBIT A



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AYYAD, NIDAL  16917-050

SEQUENCE: 00150485
Report Date: 01-03-2020



| | | | |
|---|---|---|---|
| Facility: | HAZ  HAZELTON USP | Custody Level: | IN |
| Name: | AYYAD, NIDAL | Security Level: | HIGH |
| Register No.: | **16917-050** | Proj. Rel Date: | 04-03-2095 |
| Quarters: | D04-212L | Release Method: | GCT REL |
| Age: | 52 | DNA Status: | FLM01978 / 09-10-2010 |
| Date of Birth: | 07-17-1967 | | |

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 18:371 CONSP TO DAMAGE BLDG BY USE OF EXPLOSIVE,18:844(I) & 2 EXPLOSIVE DESTRUCTION OF PROPERTY, 18:844(F) & 2 EXPLOSIVE DEST OF GOVT PROPERTY, 18:844(D) & 2 I/S TRANS OF EXPLOSIVE, 18:33, 34 & 2 DESTRUCTION OF MOTOR VEHICLE, 18:111 &2 ASSAULT ON FEDERAL OFFICER | 685 MONTHS |
| 18:924(C) & 2 - USING OR CARRYING A DESTRUCTIVE DEVICE DURING A CRIME OF VIOLENCE | 60 YEARS |

Date Sentence Computation Began:    05-24-1994
Sentencing District:    NEW YORK, SOUTHERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 /    0 /    27 | 1,377 | Years: 26 Months: 9 Days: | + 440    JC - 0    InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

### Program Plans

| |
|---|
| Ayyad has adjusted well to USP Hazelton and has graduated the Bounce Back/Transition Re-Entry Program. He currently serves as facilitator and as a GED tutor. |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| HAZ | D2 RES ORD | D2 RESOURCE ORDERLY | 02-05-2019 |

### Work Assignment Summary

| |
|---|
| Currently, Ayyad works on the unit as a GED tutor and facilitator. He assisted the GED teacher in instructing three levels of GED classes (Advanced, PRE-GED, and Basic.) He also worked during evenings and weekends tutoring other inmates who were preparing to take the final GED Exams. Ayyad has a very high level of math efficiency and can teach complex topics. He has perfect attendance and often volunteers to assist others when asked. As a result of his tutoring, the Transition Unit has graduated 8 students with their GED. This amounts to a 50% completion rate on the Blue Side of the Institution. There are more than 12 others who have passed pre-GED testing. Ayyad also has formulated/designed a math class that he currently facilitates in the unit called Math Skill Builder for GED Testing. |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| HAZ | ESL HAS | ENGLISH PROFICIENT | 06-23-1994 |
| HAZ | GED HAS | COMPLETED GED OR HS DIPLOMA | 12-19-1994 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| HAZ | C | ACE: USP TUTOR TRAINING | 09-18-2019 | 09-20-2019 |
| HAZ | C | ACE: USP TUTOR TRAINING | 09-25-2018 | 09-26-2018 |
| HAZ | C | (EM) INTERVIEW JOB FAIR (2HRS) | 08-02-2018 | 08-02-2018 |
| HAZ | C | (EM)INFORMATION JOB FAIR (2HR) | 08-02-2018 | 08-02-2018 |
| HAZ | C | USP D2 RESUME/JOB SKILLS CLASS | 05-31-2018 | 07-27-2018 |
| HAZ | C | ACE: USP TUTOR TRAINING | 09-25-2017 | 09-28-2017 |



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AYYAD, NIDAL  16917-050

SEQUENCE: 00150485
Report Date: 01-03-2020

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| BSY | C | COMPUTER AIDED INSTR. ORIENT. | 04-10-2017 | 06-19-2017 |
| BSY | C | CALLIGRAPHY-INTRO. | 08-10-2016 | 02-03-2017 |
| BSY | C | PARENTING B-UNITS/TUESDAY 1830 | 08-01-2016 | 12-16-2016 |
| BSY | C | DATA ENTRY OPERATOR CERTIFICAT | 05-27-2016 | 09-26-2016 |
| BSY | C | RECEPTIONIST CERTIFICATE | 05-27-2016 | 09-26-2016 |
| BSY | C | STOP THE VIOLENCE;9:00AM | 08-03-2016 | 09-15-2016 |
| BSY | C | VICTIM IMPACT AWARENESS M-F AM | 07-13-2016 | 08-17-2016 |
| BSY | C | JOB FAIR-INTERVIEW | 08-03-2016 | 08-03-2016 |
| BSY | C | BUSINESS INTRODUCTION B-UNIT | 05-03-2016 | 06-28-2016 |
| MAR CMU | C | I UNIT BEADING CLASS | 10-13-2015 | 12-18-2015 |
| MAR CMU | C | CMU CROCHET CLASS | 10-14-2015 | 12-18-2015 |
| THA CMU | C | TRAINING REC AIDES/INSTRUCTORS | 03-31-2015 | 03-31-2015 |
| THA CMU | C | BOOK CLUB IN CMU | 11-08-2014 | 12-12-2014 |
| THA CMU | C | ANBS CLASS IN CMU | 11-08-2014 | 12-12-2014 |
| THA CMU | C | CHARCOAL CLASS IN CMU | 11-08-2014 | 12-12-2014 |
| THA CMU | C | CMU ACE CHINA 3 | 08-04-2014 | 12-02-2014 |
| THA CMU | C | CMU ACE HEALTH 3 | 08-04-2014 | 11-03-2014 |
| THA CMU | C | BASKETBALL CLASS IN CMU | 07-16-2014 | 08-22-2014 |
| THA CMU | C | ANBS CLASS IN CMU | 07-16-2014 | 08-22-2014 |
| THA CMU | C | BOOK CLUB IN CMU | 07-16-2014 | 08-22-2014 |
| THA CMU | C | CMU ACE DECISION 2 | 04-22-2014 | 07-15-2014 |
| THA CMU | C | CMU ACE CHINA 1 | 02-26-2014 | 05-14-2014 |
| THA CMU | C | CMU ACE HEALTH 1 | 12-17-2013 | 03-14-2014 |
| THA CMU | C | CMU ACE NUTRICIAN 2 | 12-17-2013 | 02-10-2014 |
| THA CMU | C | ADVANCE CALIS CLASS IN CMU | 11-06-2013 | 12-19-2013 |
| THA CMU | C | AT RISK STAFF TAUGHT NUTRITION | 12-12-2013 | 12-19-2013 |
| THA CMU | C | ADVANCE CALLIGRAPHY CLASS | 11-06-2013 | 12-19-2013 |
| THA CMU | C | BEGINNING CALLIGRAPHY | 09-11-2013 | 10-04-2013 |
| THA CMU | C | PARENTING | 06-24-2013 | 08-30-2013 |
| THA CMU | C | CMU KEYBOARDING | 05-14-2013 | 08-05-2013 |
| THA CMU | C | CALISTHENICS | 05-28-2013 | 08-13-2013 |
| THA CMU | C | CMU KEYBOARDING | 05-04-2012 | 06-20-2012 |
| FLM | C | THE HUMAN BODY | 05-19-2011 | 08-10-2011 |
| FLM | C | MATH FROM THE VISUAL WORLD | 09-09-2010 | 12-01-2010 |
| FLM | C | BOOKS THAT MADE HISTORY 2 | 07-08-2010 | 09-08-2010 |
| FLM | C | BOOKS THAT MADE HISTORY 1 | 05-06-2010 | 07-07-2010 |
| FLM | C | THE UNIVERSE - PART 1 | 03-03-2010 | 05-25-2010 |
| FLM | C | PELOPONNESIAN WAR - PART 2 | 03-04-2010 | 05-05-2010 |
| FLM | C | PELOPONNESIAN WAR - PART 1 | 12-31-2009 | 03-03-2010 |
| FLM | C | HISTORY OF SCIENCE - PART 2 | 10-29-2009 | 12-30-2009 |
| FLM | C | HISTORY OF SCIENCE - PART 1 | 08-27-2009 | 10-28-2009 |
| FLM | C | ENGINEERING AN EMPIRE | 07-22-2009 | 10-13-2009 |
| FLM | C | BIOLOGY & HUMAN BEHAVIOR | 06-04-2009 | 08-26-2009 |
| FLM | C | NOVA | 04-29-2009 | 07-21-2009 |
| FLM | C | HISTORY OF NUMBERS | 03-12-2009 | 06-03-2009 |
| FLM | C | HISTORY OF WORLD WAR II | 02-18-2009 | 04-28-2009 |
| FLM | C | HISTORY OF EUROPEAN ART PART 2 | 12-18-2008 | 03-11-2009 |
| FLM | C | ARCHITECTURAL WONDERS | 12-24-2008 | 02-17-2009 |
| FLM | C | HISTORY OF EUROPEAN ART PART 1 | 09-25-2008 | 12-17-2008 |
| FLM | C | WAR OF 1812 & LIFE OF HITLER | 07-23-2008 | 10-01-2008 |
| FLM | C | SCIENCE WARS | 07-03-2008 | 09-24-2008 |
| FLM | C | THE VIKINGS - PART 2 | 05-01-2008 | 07-02-2008 |
| FLM | C | THE VIKINGS - PART 1 | 02-28-2008 | 04-30-2008 |
| FLM | C | BIOG: EXPLORERS & EARLY AMERIC | 11-14-2007 | 02-19-2008 |
| FLM | C | FAMOUS GREEKS | 09-13-2007 | 12-05-2007 |
| FLM | C | A HISTORY OF IMPRESSIONISM | 06-21-2007 | 09-12-2007 |
| FLM | C | PHYSICS IN YOUR LIFE - PART 2 | 04-19-2007 | 06-20-2007 |



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AYYAD, NIDAL  16917-050

SEQUENCE: 00150485
Report Date: 01-03-2020

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| FLM | C | PHYSICS IN YOUR LIFE - PART 1 | 02-15-2007 | 04-18-2007 |
| FLM | C | AMER. REVL. + US MEXICAN WAR | 01-24-2007 | 04-03-2007 |
| FLM | C | THE AMERICAS IN REVOLUTION | 03-16-2006 | 06-01-2006 |
| FLM | C | PARENTING 2 PROGRAM | 03-13-2006 | 05-19-2006 |
| FLM | C | HISTORY OF ANCIENT EGYPT -1 | 09-29-2004 | 12-21-2004 |
| FLM | C | ARGUMENTATION:EFFEC. | 08-19-2004 | 11-10-2004 |
| FLM | C | AGAINST ALL ODDS | 06-30-2004 | 09-28-2004 |
| FLM | C | DISC OF ANCIENT CIVILIZATIONS | 03-18-2004 | 06-09-2004 |
| FLM | C | HEALTH EDUCATION CLASS | 03-15-2004 | 05-10-2004 |
| FLM | C | THE JOY OF SCIENCE - PART 3 | 01-08-2004 | 03-17-2004 |
| FLM | C | HISTORY OF ANCIENT ROME-PART 2 | 01-14-2004 | 04-06-2004 |
| FLM | C | HEALTH EDUCATION CLASS | 10-05-2003 | 12-08-2003 |
| FLM | C | THE JOY OF SCIENCE - PART 2 | 07-31-2003 | 10-08-2003 |
| FLM | C | THE AFRICANS | 03-05-2003 | 05-06-2003 |
| FLM | C | THE JOY OF SCIENCE - PART 1 | 02-06-2003 | 04-16-2003 |
| LEW | W | INDEPEND.COLLEGE | 11-02-1999 | 09-23-2002 |
| LEW | C | LEISURE ACT/VOLLEYBALL 2001 | 02-26-2001 | 04-12-2001 |
| LEW | C | LEISURE ACTIVITY/SOCCER | 06-27-1999 | 08-01-1999 |
| THA | C | WELLNESS | 08-22-1994 | 11-07-1994 |

### Education Information Summary

As a college graduate, Ayyad is an effective GED tutor in the unit. His dedication to the program and to assisting others has been essential to the success of the program. He has assisted in certifying other inmates as facilitators. In addition to his education transcript, Ayyad has completed several non-ACE courses mostly as part of the Transition Unit/Bounce Back Residential Program. Those programs include: Stop the Violence, Victim Impact, Anger Management, Cognitive Thinking, Men of Influence, Building Bridges (participant and instructor), First 72 Hours, F.R.E.E., Microsoft Office Word/Excel/PowerPoint, Resource Center Specialist Facilitator Course, Basic Spanish, Reentry Simulation, Understanding Custody Classification Points, Self-Advocacy Class. For Ayyads hard work and dedication to the Transition Unit Program, he was recognized with a Certificate of Appreciation by the D Unit Team.

### Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|
| 07-20-1998 | 406 : USING PHONE OR MAIL W/O AUTH |
| 06-05-1997 | 104 : POSSESSING A DANGEROUS WEAPON |
| 02-27-1996 | 328 : GIVING/ACCEPTNG MONEY W/O AUTH |
| 12-03-1993 | 398 : INTERFERING W/STAFF-MODERATE |
| 11-24-1993 | 298 : INTERFERING W/STAFF-HIGH |

### Discipline Summary

** No notes entered **

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| HAZ | A-DES | OTHER AUTH ABSENCE RETURN | 02-05-2019 | CURRENT |
| HAZ | A-DES | TRANSFER RECEIVED | 07-31-2017 | 02-05-2019 |
| BSY | A-DES | TRANSFER RECEIVED | 03-16-2016 | 07-27-2017 |
| MAR CMU | A-DES | TRANSFER RECEIVED | 07-30-2015 | 02-22-2016 |
| THA CMU | A-DES | OTHER AUTH ABSENCE RETURN | 02-07-2014 | 07-30-2015 |
| THA CMU | A-DES | TRANSFER RECEIVED | 05-15-2012 | 02-07-2014 |
| FLM | A-DES | OTHER AUTH ABSENCE RETURN | 06-03-2008 | 04-26-2012 |
| FLM | A-DES | TRANSFER RECEIVED | 10-04-2002 | 06-03-2008 |
| LEW | A-DES | WRIT RETURN | 10-14-1999 | 09-23-2002 |
| LEW | A-DES | WRIT RETURN | 03-22-1999 | 09-29-1999 |
| LEW | A-DES | TRANSFER RECEIVED | 10-21-1997 | 01-28-1999 |
| THA | A-DES | WRIT RETURN | 01-03-1996 | 10-21-1997 |
| THA | A-DES | US DISTRICT COURT COMMITMENT | 05-25-1994 | 07-22-1995 |

### Current Care Assignments



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AYYAD, NIDAL  16917-050

SEQUENCE: 00150485
Report Date: 01-03-2020

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 01-06-2005 |
| CARE1-MH | CARE1-MENTAL HEALTH | 07-15-2010 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 05-30-2012 |
| YES F/S | CLEARED FOR FOOD SERVICE | 05-30-2012 |

### Current PTP Assignments

| Assignment | Description | Start |
|---|---|---|
| CHG UNQUAL | CHALLENGE UNQUALIFIED | 08-09-2017 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 03-27-2017 |
| ED COMP | DRUG EDUCATION COMPLETE | 11-26-2018 |

### Physical and Mental Health Summary

** No notes entered **

### FRP Details

Most Recent Payment Plan

FRP Assignment: **NO OBLG**  FINANC RESP-NO  Start: 10-02-2001
Inmate Decision: **AGREED**  **$125.00**  Frequency: **QUARTERLY**
Payments past 6 months: **$0.00**  Obligation Balance: **$250,000.00**

Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $450.00 | $25.00 | IMMEDIATE | EXPIRED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST CV | $250,000,000.00 | $249,999,800.00 | DEFERRED | WAIVED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 3 | FINE COMB | $250,000.00 | $250,000.00 | DEFERRED | WAIT PLAN |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

### Financial Responsibility Summary

** No notes entered **

### Release Planning

Ayyad has facilitated several release planning programs and has been instrumental in the Transition Unit Program. He has assisted many inmates in their release planning and reentry goals.

### General Comments

Besides having 20+ years of clear conduct, Ayyad an overall positive institutional adjustment and professional development. He has developed an appropriate and professional rapport with staff and is seen as an example in the unit. He continues to assist others in GED classes and preparing for testing. He most recently completed the "Catalyst" Course which was a 12 week course designed to use the Wellness Recovery Action Plan (WRAP) to create a life by design/A Life Coaching Approach. This was a pre-requisite to more advanced life coaching courses.



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: AYYAD, NIDAL  16917-050

SEQUENCE:  00150485
Report Date: 01-03-2020

Name:  AYYAD, NIDAL
Register Num:  16917-050
Age:  52
Date of Birth:  07-17-1967
DNA Status:  FLM01978 / 09-10-2010

_Nidal Ayyad_
Inmate   (AYYAD, NIDAL Register Num: 16917-050)

1/7/2020
Date

Chairperson

1-7-2020
Date

Case Manager

1-7-2020
Date

# EXHIBIT B



United States Department of Justice
Federal Bureau of Prisons
Federal Correctional Complex - Hazelton
Post Office Box 450
1640 Sky View Drive
Bruceton Mills, West Virginia 26525
(304) 379-5000

12 March 2019

MEMORANDUM FOR: To Whom It May Concern

Inmate Ayyad, Nidal #16917 is incarcerated at USP Hazelton.  He is
currently a participant in the Bounce Back/Transition Re-entry
program.  He is in good standing within the program and works on the
unit as a GED Tutor.  During his time as a tutor, six participants
have obtained their GED.  He works with the students during work hours
and during his own personal time.  He has not been disciplinary
problem and always volunteers when needed or when asked.  He has set
an example to the other inmates within the program.  If you have any
question please feel free to call.

F. VanKirk
D Unit Counselor



United States Department of Justice
Federal Bureau of Prisons
Federal Correctional Complex - Hazelton
Post Office Box 450
1640 Sky View Drive
Bruceton Mills, West Virginia 26525
(304) 379-5000

11 June 2019

MEMORANDUM FOR: To Whom It May Concern

Please be advised that Inmate Ayyad, Nidal #16917-050 is incarcerated at USP Hazelton.  He recently graduated from the Bounce Back / Transition Unit program but remains on the unit as a Mentor and a facilitator.  Specifically he has been a tremendous help within the GED portion of the program.  He works with the students during his work ours as well as his own personal time.  He has never been a disciplinary problem.  He volunteers as needed and when asked. He sets an example for others within the program to follow.

F. VanKirk
D Unit Counselor



United States Department of Justice
Federal Bureau of Prisons
Federal Correctional Complex - Hazelton
Post Office Box 450
1640 Sky View Drive
Bruceton Mills, West Virginia 26525
(304) 379-5000

January 3, 2020

To Whom It May Concern:

This memorandum is in reference to inmate Nidal Ayyad who is currently serving his time at USP Hazelton since July of 2017. During his time at USP Hazelton, Ayyad has been housed in the D2 Transition Unit Program. He has served as a program participant and Facilitator during this time. He has volunteered his time to assisting in moving the program forward and assisting in tutoring other inmates in GED. Specifically, Ayyad has worked as a tutor with an expertise in Mathematics. He has successfully graduated several participants in GED and aided even more in preparing for the PRE-GED Testing. He has been an instrumental part of the formulation and continued success of the Transition Unit Program the Education GED program at USP Hazelton. The Progress Report completed and dated January 3, 2020, shall serve as an overview and running transcript of all programs he has completed and facilitated in addition to his Bureau of Prisons official Educational Transcript (PEED).

Any further information or requests for documentation can be formally requested through the USP Hazelton D-Unit Team and can be reached at the information provided on the Bureau of Prisons, USP Hazelton Public Directory.

D Unit Team

To whom it may concern,


Nidal Ayyad, register number, 16917-050, was my GED tutor from June 2017 throughout until his transfer. Inmate Ayyad assisted me in instructing three different levels of GED classes (advanced, pre, and basic).  He also worked during the evening and weekends times in tutoring other inmates that were preparing to take their official GED tests. During his tutoring in my classes, we had several GED completions. Ayyad has a very high level of math efficiency and can teach complex topics, including some calculus. He had excellent attendance, and would give me notice if he needed a class off.  I would highly recommend him as a tutor.



For further questions, you can reach me at FCC Hazelton, West Virginia.

Thank you,

J. Ridenour (Teacher)

# EXHIBIT C

## TO WHOM IT MAY CONCERN

I, Christopher    Tyler # 41441-007, currently incarcerated at the United States
Penitentiary-Hazelton , WV. I am a Washington D.C. prisoner. I am 42 years old.
I always struggled very hard to pass my GED, specially the math!!a subject that always
confused me  and prevented me from obtaining my GED. Being in the  ransition Reentry unit
gave access to Mr. Ayyad, the tutor, he simplified the math and was very patient with me
to learn. He never gave up on me, despite my failing the test twice. Mr. Ayyad used to
spend his personal time with me to tutor me and prep me for the test, he sacrificed
yard in order to tutor me. It p AID OFF, I obtained my GED in late 2018...I was so happy
and felt a great sense of confidence. The GED will open many doors for me. I can't thank
Mr. Ayyad for his help enough.

Dated : OCT. 14, 2019

41441-007

Christopher Tyler # 41441-007

<u>TO WHOM IT MAY CONCERN</u>

   I am <u>Dantay Stephens</u> Reg. Number 43822-007 a Washington D.C. prisoner at the ''
United State Penitentiary-Hazelton, West Virginia. Currently housed in the Reentry
Transition Unit, which designed to help inmates prepare for release back to society. One
of my biggest hurdles to prepare for reentry is I have no high school education. I need my
GED diploma!! The entire GED testing process was a dreaded task for me. That has changed,
thanks to Mr. Ayyad. He is the GED tutor in the unit. Mr. Ayyad  tutoring has made the math
and other topics so simple and easy.  He spends his evening hours and weekend tutoring and
preping me for the test. Many times we did not go to the yard so we can prepare!

   Finally I conquered the GED and passed the official test.  Now I have the GED diploma,
I grduated on December 13th, 2019. I feel a sense of accomplishment, I can do anything I want
even a college degree. Shortly I will be released with a qualifications to have better jobs
and lead a constructive life. I greatly appreciate Mr. Ayyad's help.

Dated : 10-15-2019

Dantay Stephens,   43822-007

## TO WHOM IT MAY CONCERN

My name is **JOMOKAYATTA COOK** Registration number 31669-171, I am a federal prisoner incarcerated at the U.S. Penitentiary- Hazelton, West Virginia. Housed in the Transition Reentry Unit, where Mr. Ayyad is the designated GED Tutor. He helps inmate students in a class setting and on one-on-one basis. He has tutored me many hours that resulted at the end in obtaining my GED diploma on August 28, 2018. In few months will re-enter society equipped with my GED giving me better employment opportunities and more....Thanks to Mr. Ayyad who was a great help.

Dated : 10-13-2019

Jomokayatta Cook    31669-171